UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


PATRICIA COTTERMAN-HENSON, )
 )
       Plaintiff, )
 )
v. ) 3:09-CV-533
 ) (PHILLIPS/SHIRLEY)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
       Defendant. )


## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Administrative Record [Doc. 10] and Defendant's Motion for Summary Judgment [Doc. 12]. Plaintiff Patricia Cotterman-Henson[1] ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") Robert L. Erwin to deny her benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 16 and December 1, 2005, respectively, Plaintiff filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). [Tr. 14]. On both applications, Plaintiff alleged a period of disability which began on June 20, 2003. [Tr. 14]. After her applications were denied initially and also denied upon reconsideration, Plaintiff requested a

---

[1]Plaintiff is referred to in the record mainly as Patricia Cotterman, but she has recently married and is listed in later portions of the record as Patricia Henson.

hearing. On November 7, 2007, a hearing was held before the ALJ to review the determination of Plaintiff's claim. [Tr. 23-53]. On March 13, 2008, the ALJ found that Plaintiff was not under a disability from June 20, 2003, through the date of the decision. [Tr. 11-22]. On October 7, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-5]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). More specifically, Plaintiff requests that this case be remanded for consideration of new evidence: two reports detailing her treatment at a pain management center. [Doc. 11 at 5].

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2008.

2. The claimant has not engaged in substantial gainful activity since June 20, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b), and 416.971 *et seq.*).

3. The claimant has the following impairments: residuals from right humerus fracture, back impairment, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work, but with limitations of occasional climbing, stooping, bending, and crouching, no crawling or kneeling on the left knee. She can stand or walk 6 hours in an 8-hour workday and for 30 minutes continuously and occasionally she can reach above the shoulder with the right arm. She is able to understand, remember and complete detailed tasks on a regular and continual basis with occasional difficulty sustaining

concentration, persistence, and pace. She is able to interact with small groups, one on one and occasional or superficial, but not continual general public interaction. She has no major problems with supervisor(s) or coworkers. She is able to adapt to routine, not frequent or fast-paced change. She can avoid major hazards and take most transportation independently. She is able to set an carry out most long-range goals with only occasional assistance.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 30, 1960 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 20, 2003 through the date of this decision (20 CFR 404.1520(f)-(g) and 416.920(f)-(g)).

[Tr. 16-21].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v.

Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[2] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action . . . found to be . . . without observance of procedure required by law.'" (quoting 5 U.S.C. § 706(2)(d) (2001))); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

---

[2] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases." (quoting 20 C.F.R. § 402.35(b))).

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

Finally, when reviewing the Commissioner's decision, the Court may order that additional evidence be taken "upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record[.]" 42 U.S.C. § 405(g).

On review, "the party seeking remand bears the burden of proving that a remand is proper under Section 405." Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986) (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551 (6th Cir. 1984)); see also Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) ("Claimant bears the burden of proving his entitlement to benefits.").

## IV. ANALYSIS

Plaintiff does not allege that the ALJ committed any errors when rendering his decision.

Instead, Plaintiff requests that her case be remanded to the Commissioner for the consideration of what she avers is new and material evidence that did not exist at the time of her ALJ hearing on November 7, 2007.

When reviewing a final DIB and SSI decision, the Court, in its discretion, may "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). If the Court so orders, the Commissioner "shall . . . after hearing such additional evidence . . . modify or affirm [his] findings of fact or [his] decision, or both, and shall file with the court any such additional and modified findings of fact and decision[. ]" Id. The party seeking to introduce new evidence bears the burden of showing that the proffered evidence meets three requirements before remand is appropriate.

First, the proffered evidence must be "new," defined by the Court of Appeals for the Sixth Circuit as "'not in existence or available to the claimant at the time of the administrative proceeding.'" Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990)).

Second, the proffered evidence must be "material." In the Sixth Circuit, evidence is material if it satisfies three conditions. First, evidence is material "only if 'there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." Id. (quoting Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988)). Second, evidence is material only if it is not cumulative; that is, it must not simply duplicate what was present before the ALJ at the prior hearing. See Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 149 (6th Cir. 1990). Third, evidence is material only if

it concerns the plaintiff's medical condition during the period from the alleged onset date to the date of the ALJ hearing. See Sizemore, 865 F.2d at 712 ("Evidence which reflect[s] the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began."); see also Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 685 (6th Cir. 1992) (holding that new evidence introduced after a hearing was immaterial where it was gathered after plaintiff had suffered a clear worsening of his condition); Oliver, 865 F.2d at 966 (explaining that evidence is not material unless it reveals further information about a claimant's condition *before* the date of the ALJ hearing).

Finally, the party seeking remand must show good cause for introducing new evidence after the ALJ hearing. This is accomplished by "demonstrating a reasonable justification for the failure to acquire and present evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357 (citing Willis, 727 F.2d at 554). The Court of Appeals for the Sixth Circuit has ruled that "good cause is shown for remand if the new evidence aris[es] from continued medical treatment of the [claimant's medical] condition, and was not generated merely for the purpose of attempting to prove disability." Koulizos v. Sec'y of Health & Human Servs., 802 F.2d 458, 1986 WL 174888, at *2 (6th Cir. 1986) (unpublished table decision).

For the following reasons, the Court finds that Plaintiff has carried her burden of showing that remand is appropriate in this case.

### A. The proffered evidence is new.

In seeking remand, Plaintiff has offered two reports authored by Dr. Robert Nelson of Saint Mary's Medical Center Pain Management Center-North. These reports detail Dr. Nelson's treatment of Plaintiff from May 22, 2008, through March 11, 2009, including his prescriptions of morphine, methadone, and Duragesic patches. See [Docs. 11-1 and 11-2].

The Commissioner contends that Dr. Nelson's two reports are not new because they only provide evidence that was "already known" at the time of the ALJ hearing. See [Doc. 13 at 9]. In support of this proposition, the Commissioner argues that the existence of Plaintiff's back condition and her consumption of Hydrocodone were well known to the ALJ at the time of the hearing. See id. Because of this, he argues, Dr. Nelson's subsequent treatment of Plaintiff and his prescription of morphine and methadone are not new evidence. See id.

However, the Commissioner directly contradicts this argument later in his brief, stating that "there is no question that this evidence did not exist prior to . . . the date of the ALJ's decision," and that "the evidence from May 2008 through March 2009 was not in existence [on the date of the decision]. . . . [This] makes the evidence new." Id. at 9-10.

Even putting to one side the Commissioner's apparent concession of this point, Dr. Nelson's two reports meet the legal requirements for "newness." First, evidence of Plaintiff's treatment at the pain clinic and her prescriptions for morphine and methadone simply was not before the ALJ at the November 7, 2007, hearing. Plaintiff's treatment at the pain management center did not begin until May 2008, well after the hearing. It is arguable that because it was *possible* for Plaintiff to visit a pain clinic prior to the hearing, the purportedly new evidence was actually "available" to her at the time of the hearing. However, Plaintiff is a layperson who was receiving treatment from her family physician, Dr. Richard Burdeaux. As such, she could not reasonably have been expected to divine her treatment options and seek them out in the absence of a recommendation from Dr. Burdeaux. The Court finds that it was reasonable for Plaintiff to rely on Dr. Burdeaux's judgment. The Court further finds that because Dr. Burdeaux did not advise the course of treatment that resulted in the proffered evidence until after the ALJ hearing, the evidence was not available to Plaintiff at the time of the hearing. Accordingly, the Court concludes that Dr. Nelson's two reports

are new for the purposes of 42 U.S.C. § 405(g).

**B.      The proffered evidence is material.**

The Commissioner contends that Dr. Nelson's two reports are not material because (1) they indicate "a deterioration in [Plaintiff's] back condition" that is "a recent flare-up, not a condition that had been disabling for years," [Doc. 13 at 11, 13], and (2) they are cumulative, <u>see</u> [Doc. 13 at 11]. The Court disagrees.

To support the argument that Dr. Nelson's reports merely evince a subsequent deterioration in Plaintiff's condition, the Commissioner points to Dr. Nelson's statement in the first report that steroid injections used to treat Plaintiff "'lately ha[d]n't been working for her.'" [Doc. 13 at 12] (quoting [Doc. 11-1 at 2]). The Commissioner interprets this statement as evidence that Plaintiff suffered a "flare-up" in her chronic back condition sometime after the ALJ hearing. <u>See</u> [Doc. 13 at 12]. However, as Plaintiff argues, the record offers little support for this interpretation. <u>See</u> [Doc. 14 at 4]. First, as Plaintiff points out, the Commissioner has offered no evidence showing that the word "lately" refers exclusively to the period of time between the ALJ hearing and Plaintiff's first visit to Dr. Nelson. <u>See</u> [Doc. 14 at 5]. The Court finds that Dr. Nelson's statement can be interpreted to mean that steroid injections "ha[d]n't been working for" Plaintiff for a period of time that included some time before the ALJ hearing. Second, the Commissioner has not pointed to any evidence in the record suggesting that there was some event after the ALJ hearing that worsened Plaintiff's condition. Finally, Plaintiff's self-reports of her pain levels (in the 8-10 out of 10 range) were consistent before, during, and after the hearing. <u>See</u> [Tr. 201, 221, 243]; [Doc. 11-2 at 6, 12]. This fact, coupled with Plaintiff's difficulty in holding a job for any significant length of time after the alleged onset date, <u>see</u> [Tr. 31-32, 36-37, 121-23], suggests that her leg and back problems did not change significantly during the relevant period. The Court concludes that Dr. Nelson's reports

contain information that is relevant to Plaintiff's medical condition at least as early as the ALJ hearing date.

The Commissioner next argues that Dr. Nelson's reports are nothing more than cumulative evidence of Plaintiff's need for pain medication. [Doc. 13 at 9] (arguing that the reports are "cumulative . . . That is, this supposedly 'new' evidence does not put forward any information not already known."). The Commissioner concedes that Dr. Nelson was the first doctor to prescribe morphine and methadone for the management of Plaintiff's pain. But the Commissioner argues that the ALJ was aware that Plaintiff required strong pain medication when he rendered his decision. The Commissioner explains that the ALJ expressly considered the fact that Plaintiff had been prescribed the "strong" medication Hydrocodone. See [Doc. 13 at 11]. The Commissioner therefore argues that evidence of additional prescriptions for pain medications is cumulative. This argument assumes that prescriptions to Hydrocodone, morphine, and methadone are of equal significance. The Court cannot make such an assumption. Accordingly, the Court finds that the reports showing that Plaintiff was prescribed methadone and morphine are not cumulative evidence.

Finally, the Court finds that "there is a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim if presented with" Dr. Nelson's reports.[3] Sizemore, 865 F.2d at 711. At the ALJ hearing, the vocational expert ("VE") testified that "the pain levels that [Plaintiff] indicated . . . in her back and in her leg would, in my opinion, preclude competitive employment if they were the eight out of ten [or] the ten out of ten level." [Tr. 50].

---

[3] The Commissioner does not specifically address the likelihood that the ALJ would have rendered a different decision if Dr. Nelson's reports were before him. Nevertheless, the Court briefly analyzes the issue because it is a key factor when assessing the materiality of proffered evidence. See Sizemore, 865 F.2d at 711 (evidence is material only if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence").

Plaintiff had testified earlier in the hearing that the pain in her back and legs was "ten" and "eight," respectively. [Tr. 43]. The ALJ reconciled the testimony of Plaintiff and the VE by finding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [the pain associated with her leg and back ailments] . . . are not entirely credible." [Tr. 20]. If the ALJ had Dr. Nelson's reports at the time of the hearing, it is more likely that he would have found Plaintiff's self-reports of pain to be credible. Given the VE's opinion that pain at the level self-reported by Plaintiff would preclude employment, there is a reasonable probability that the presence of Dr. Nelson's reports would have changed the outcome in this case.

The Court concludes that Plaintiff's proffered evidence is material for the purposes of 42 U.S.C. § 405(g).

**C.     Plaintiff had good cause for not introducing the proffered evidence at the ALJ hearing.**

The Commissioner contends that Plaintiff has not demonstrated good cause for failing to acquire and present information similar to Dr. Nelson's reports at her ALJ hearing. Again, the Court disagrees.

Dr. Burdeaux's treatment notes indicate that Plaintiff suffered from significant back and leg pain dating at least back to September 2004. See [Tr. 201-234]. In 2008, Dr. Burdeaux referred Plaintiff to Dr. Nelson for pain management. Plaintiff contends that Dr. Burdeaux referred her to Dr. Nelson "in the normal course of . . . treatment." [Doc. 14 at 7]. Dr. Nelson's reports do not contradict this contention. [Doc. 11-1 at 2]. Moreover, the Commissioner has pointed to nothing indicating that Dr. Nelson's reports were "generated merely for the purpose of attempting to prove disability," Koulizos, 1986 WL 174888, at *2, or that Plaintiff deliberately delayed seeking treatment from a pain management specialist. Accordingly, the Court finds that Dr. Nelson's reports

were generated during the normal course of Plaintiff's treatment. The Court concludes that there was a reasonable justification, and hence good cause, for offering evidence of specialist treatment after the ALJ hearing in this case.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[4] that the Commissioner's Motion for Summary Judgment **[Doc. 12]** be **DENIED**, and that Plaintiff's Motion for Judgment on the Administrative Record **[Doc. 10]** be granted to the extent that it requests that this case be remanded to the Commissioner pursuant to 42 U.S.C. § 1383(c)(3) and sentence six of 42 U.S.C. §405(g) for a new hearing consistent with this report.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 155 (1985) (affirming the Court of Appeals for the Sixth Circuit rule "conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections"). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are preserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).